Appellant Carl Avitum appeared in pro se, Scott Talkov appeared for appellee. Okay, good morning. Mr. Avitum, you have a total of 15 minutes. Do you want to save some of that to speak after Mr. Talkov speaks? Good morning. I'd like to reserve five minutes, please. Five minutes. Okay, very good. Go ahead, please. May it please the court, my name is Carl Avitum and I'm the appellant in this matter. The court has acknowledged that it's read all the briefing and it's read the record. Very simply, this is an issue of an appeal over a sale, not a sale order, I'm sorry. It's an appeal over a lien avoidance motion order. And without rehashing all the law, it really comes down to there was two fundamental errors committed by the bankruptcy court. The first one I'm going to say is that the bankruptcy court set aside documents that were recorded at the Orange County Recorder's Office, which were not even liens under California law and Ninth Circuit law. It then went on to set aside... Let me stop you for a second because we've got a fundamental challenge here as an appellate court. The court's rationale, I think, was set forth in a tentative ruling, which we don't have. And unless you gave it to us and I don't know about it, we haven't seen it. And we did see a transcript so we know what the back and forth was when you folks argued to the bankruptcy judge. But if we're going to be asked to evaluate findings of fact and conclusions of law, we're at a bit of a disadvantage. And I don't know how you want to address that, but I just have to tell you at the outset that that kind of puts us behind the eight ball here. Go ahead and make any arguments you want, but to the extent you're saying, well, Judge Smith made an error because... It'll be hard for us to evaluate that without seeing what her reasoning was. And we, at this point, haven't really seen what her reasoning was. And I understand that, Your Honor. And I have requested that the... And it's even in the transcript that the tentative ruling was to be attached to the final order, but it didn't get attached to the final order. It was signed and... You're right about that. You're right about that. It's not attached. You're right. Yeah. And the court clearly said you can attach it. I asked the opposing counsel, Mr. Telekoff, to attach it in an email. It didn't attach it by the time I saw that it wasn't attached. Okay. And we had a problem. The court said, well, I've already signed the order, so it goes the way it is. So that's... Okay. It was unfortunate to me, but there's nothing I can do if the court decides to not attach it and just signs the order. Yeah, but the problem is there's very little we can do if we don't understand what her reasoning is. That's where we're a little stuck. And I'm not... I say that with a ton of sympathy. I hear what you're saying. But, you know, we're trying to figure out if a mistake was made. And ordinarily, the first thing we have to look at is, well, what did the judge do and why did she do it? So that's where we are. Well, the answers to your questions are actually contained within the transcript, which is part of the record. And that is the court basically looked at exception number 14 and it looked at exception number 15.1. And it said, these are liens, and I'm going to set them aside. The fundamental error is that exception 14 is just a standalone document. And I argue to the judge, it's on the record, that the only way you can have a lien on real property in California is under Code of Civil Procedure 697.320. This is not novel. This is set forth in Aldo Soro, which the Ninth Circuit really... Well, here's what might be novel, okay? Why does that prejudice you? I mean, we have to determine whether the judge made a mistake. And you're saying, well, she definitely did because this wasn't a lien. But the second part of appellate review is, does it matter? So the question is, well, why? I mean, if, for example, sir, you didn't have a lien, then you weren't a secure creditor, and you're sort of indifferent to this, right? It doesn't really matter to you under 522F. So the question then becomes, why does it matter to you? And that's what I'm not understanding. So if you can give me a sense of why you're prejudiced by that. And if, you know, did you make that known to the court on the other side why you're prejudiced? That's going to help me a lot, okay? I understand that, and that's a great question. And the answer is very simple. When the court just cumulatively looked at all these liens and just basically said, oh, well, they infringe. But the court had touched on oral argument and basically said, look, we have the... I look at the exemptions on the date. Now, the part of the bankruptcy code for 522F says there's an equation that you have to calculate. And you have to include all the liens together. And then you do this equation, and that's set forth an in-rate pipe, which is a controlling case. Now, when you start throwing in items that are not liens to equate that dollar value, it throws the entire equation off. Well, can I stop you there? This is all premised on your belief that the exemption amount is not $600,000 but closer to $145,000, right? And this is the second part of the error. But in order to get where you want to go, we have to agree with you about that, correct? Correct. Okay, gotcha. Thank you. Okay, and I appreciate you asking that question because that just moves ahead to the second error. Anyway you want. You handle the issues any way you want. No, I understand. But you segued into it, and I appreciate it. So the snapshot rule, which the court referenced in its oral argument saying on the day of the petition, I have to look at the exemption, and I have to give it to her. But under the Ninth Circuit law of Jacobson, which is controlling, that's not the entire analysis. The court is obligated to go and say, I have to look at the California Homestead Act in its entirety because it's an opt-out state, and I have to determine the valuation of this exemption, which is obviously going to have an effect on whether or not there is going to be any impairment of any valid liens that have to be judicial liens. I mean, the debtor has to prove that there's an impairment, and not only is there an impairment, the impairment is that of a judicial lien. What the court just did was just said on the date of the petition, she had an exemption. I'm giving her $600,000. The court did not do the full analysis and say, I have to look at the full scope of the declared Homestead Act because it's undenied. Ms. Fridman filed a declared homestead, and the declared Homestead Act is subject to limitations. One of the limitations is if there's liens in place prior to the amendment of the value of the homestead, which did take place on January 1st, 2021, then you have to set it at the value when the lien attached. Is there a different rule in bankruptcy once one files a petition? Do we import another little overlay on that? There was a case that was in results and unpublished opinion, and it somewhat said, well, you kind of have to look at the day of the petition. And it was tried to be sort of shored up by saying, well, here's a hypothetical. If there's multiple liens, how do we address that? Because the trustee might be confused what date we set that on. But that is sort of a hypothetical that is cured by looking at the actual California Homestead Exemption Act, which says that when you have multiple liens, you set the date of valuation at the earliest date. And that's California statute. So that issue is pretty much taken care of. Now, this unpublished opinion is in conflict with another case in Ray Morgan, which is a public decision. And ultimately, the Ninth Circuit in 2012 came down and Ray Jacobson and said, this is what you have to do as part of the snapshot rule. You determine if there's an exemption. Then you analyze the entire act to determine the good with the bad. And the very good quote from Jacobson that says, when a debtor elects a homestead exemption, he's going to take the fact with the lien. And that is also reaffirmed in other decisions where they say you cannot select part of the Bankruptcy Act and say, I like this part. I like the 600,000 from the automatic. And I don't like the declared part because I might be subject to a cram down. So where you're asking is, is this a no harm, no foul issue? Because the court just strictly looked at this and did not do the second part of the Jacobson analysis, which it was required to do for the snapshot rule. It didn't determine the valuation that it was required to of how much the exemption is. And in this case, if the exemption came back at $146,000 or $150,000, the date of the first liens, because it's undeniable that I had liens prior to the amendment amount. Then that $146,000 would leave an equity cushion of over $100,000. The question really is, is there an interplay between deemed rules on a bankruptcy filing that will kind of get around what you're telling us? I think correctly is otherwise the rule under California exemption law. That's the question. But it's not just California exemption law. It's also the Ninth Circuit law that sort of interplays here. But what they did in their initial motion is they basically said, we want $600,000. And they kind of played off on, well, it's under an automatic exemption. It wasn't until the reply brief came out that they said, no, it's a declared exemption. And that's in Ms. Fridman's declaration. And that's in the record. The frustrating thing is it's a little bit of both. And I hear what you're saying that that's kind of that's not the way you'd like to look at. Well, I think it's been what needs to be followed is the precedent of the case of Jacobson, which the bankruptcy appellate panel has adopted in 2020 in its Anderson opinion. And it says that, you know, you have to take the entire act. You have to look at the entire state opt out act and say, OK, let's look at it and let's take the good from the bad. You can't allow debtors to say, well, I want to be half in and a half out. I want an exemption, an automatic exemption and say $600,000. But that requires me to qualify for it. But I don't qualify for it. And it's clear that in the bankruptcy court's order, there's no finding of an intent to reside. Let me stop you, Mr. Abitum, because you're inside your five minutes. I just want to point that out to you in case you want to reserve the rest of your time. It's up to you. Time flies. I'll try to finish up in 30 seconds, Your Honor. Thank you. I appreciate it. So what we're looking at here is that she wants she starts off by kind of coming in saying, I want this automatic homestead. And then after we file an opposition, she comes in with a reply. And then the declaration says, well, I intend on staying there. But also, I did file a declared homestead in the California homestead law. Once you file a declared homestead, that property is always going to be a declared homestead. And there's no way around that. There's no law that says you can get around it. The only way to get around it would be to abandon the homestead. And she sure hasn't done that. Yeah, I think there's another way to look at it. We'll get into that when we come back. Thank you. Okay, thank you. Mr. Talcott, please go ahead. Good morning, and may it please the court. As to the issue that the recorded judgments are not liens, the bankruptcy court and the title company concluded that both recorded judgments were liens. As to the recorded judgment, there was no citation below to CCP 697.310, now cited by the creditor, to require an abstract of judgment to create a lien. Rather, the bankruptcy court found that this creditor, quote, wants this judgment to serve as a basis for a lien. Let me stop you right there. I read the transcript, and there's clearly argument that this is a lien, right? So it's not as if that's waived, correct? Correct. All right. So how do I, how do we, excuse me, assess the court's evaluation about what Mr. Abitum wants? Is that a finding of fact? I suppose the transcript is the record here on appeal. No, but, okay, so it's a finding of fact? As to whether it's a judgment? No, no, as to what she thinks he wants. I mean, you're citing to me, you know, basically the judge determined what she believed Mr. Abitum wanted. What do we make of that? Well, I think that's correct. He does seek to enforce it as a lien, and I think most importantly in this case, the judgment, most notably the 2020 judgment that he wants to not be avoided, is merely an amendment to the abstract of judgment and judgment in 2011. That's a different argument. That's a different argument. You're not answering my question. The answer is I don't know whether it's a factual finding or a legal finding. All right, let's move on. Okay. The creditor responded that he was hoping that the 2020 judgment was giving notice that it is a future interest that Rosa Fridman has said, I'm giving you a security interest, and the court replied to the creditor, quote, the judgment doesn't say that. So all of his factual interpretations of the 2020 judgment were rejected by the court below. It looks a lot like an amendment to the 2011 judgment, which does have an abstract. So if it's an amendment to an abstract of judgment, it can be avoided in the same way. But most importantly, it really doesn't matter which way this court goes on this issue, because if it's not a lien, this court should simply find that it's not a lien. No, this court's not going to find anything, full stop there, okay? This is an appellate court. We're not doing that. Period. Absolutely. And as to the snapshot rule that Mr. Appletune raises, it's not clear why he's citing Jacobson, where the Ninth Circuit found that bankruptcy exemptions are fixed at the time of the bankruptcy petition. That was the magical date upon which Rosa Fridman had a homestead, in which the valuations of the property were determined. The exemption was $600,000, which far exceeds her equity of about $230,000. There were no mathematical calculations, calculation errors. Unless this court has any questions, I would rest on that. Any more questions? Well, let me just ask you to address what Mr. Appletune is saying, which is that there is a snapshot rule. And the snapshot rule, at least in part, incorporates California law when you're talking about a declared homestead, right? Yes, Your Honor. His thesis is that that really should be the end of the analysis. If you're looking at a snapshot, what you should be looking at is what the debtor would have been entitled to as of the commencement of the case. Now, I think you probably look at it differently. Why don't you articulate for us why you do? Yes. Even though there is a recorded homestead, and even though she attached it to her motion, that does not prevent her from asserting the automatic homestead. The only effect of the recorded homestead in this particular case is that it shifted the burden to the creditor to show that she was not entitled to a homestead. But even if she had the burden, she provided a declaration that she does live at the property, that she intends to live at the property. We had evidence as to the valuation, and that it easily exceeded the $230,000. Let me ask you a couple of questions. I think you put the declaration and the evidence, and again, we don't have the tentative, so we're flying a little bit blind about what the court actually found and actually concluded. But we don't have any evidence that the court actually made a finding about intent to live there. So what do we do with that? Well, at this point, it would be Mr. Abitum's job to find on appeal that there was an error. He would need to point to the record that did not make this finding or that he raised this issue. She clearly lived at the property. There was all the evidence that she lives at the property. He's been serving her at this property for years, and she's still there. And as to the valuation, there was evidence of valuation. There was no particular analysis in the court below that the mathematical calculations were incorrect. Okay, let's come back to that for a second. You and I probably know that the question of the source of law in bankruptcy matters is sometimes a little bit complicated. You know, the Bankruptcy Code can look to state law for fundamentally was there an interest in what is the nature of it. And I think that's what Mr. Abitum is saying, and I think he's right. Where it gets complicated is there are times when the Bankruptcy Code goes on to say, but what that means in a bankruptcy might be something a little bit different. There might be a different question to that. So articulate for me why, in your view, as of the petition date, the debtor both gets the benefit of the exemption as it's declared under California law, but why the effect of that might be a little bit different because of the intervening bankruptcy. Yes, well, I think your Honor is hinting at the automatic homestead versus the declared homestead issue. The law is clear that she can claim the automatic homestead even if she has a recorded homestead, even if she attaches that recorded homestead. She did, in fact. Well, let me just skip to the punch. Is the reason for that that we deem the bankruptcy to be basically the day on which a forced sale would occur? That's correct. All right. Okay. I rest on the briefs, Your Honor. All right. Any more questions from the panel? Thank you, Your Honor. Okay. All right. Thank you. Mr. Abitum, is it Abitum? Did I get that right? That's correct, Your Honor. Thank you. Okay. Thank you. You've got about three and a half minutes, a little more than that to go. Please go ahead. I'll try to rush through it. Once again, you have a vacillation by the creditor between I want the automatic homestead. If she wants the automatic homestead, she has to establish that she intended to stay there, and there needs to be a finding by the court. It is clear from the court's final order that there is no finding. But what prevents her from seeking the automatic homestead is the California Homestead Act says once you file the declared homestead, which Ms. Fridman admits in her declaration, which is an ER-448 of the record, she says, I filed a declared homestead. And under California law, and that's 704.920 of the Code of Civil Procedure, it says once you file a declared homestead, that property is always going to be a declared homestead. And that is, it makes sense because when you look at the Ninth Circuit law of Jacobson and the laws that are cited there within, and Alderson that came from this panel in 2020, you have to look at the entire act. And so you can't just basically say, well, the debtor can choose the automatic homestead to shift the burden over to the objecting creditor. And she wants the automatic homestead, automatic 600,000, but she wants to avoid the California law that says once you report a homestead, and you represent that to the court, then you can now deviate from that. Now, another interesting point is that... Let me just ask you, is it so much that she's deviating or that we create what might seem to you to be a fiction? That, you know, you have the benefit of the declared homestead, but we look at it through a bankruptcy lens, and we treat the filing of the petition as if it were a forced sale date. That's really the question, sir. If that's the wrong answer, why, or why does that not apply? Well, it's established law that it is deemed to be a forced sale, okay? Okay. But the issue is that we, that's the bankruptcy section part of it. And as we talked about, there is this sort of, you know, convergence of the California law and the bankruptcy law. But we follow the California law because the Ninth Circuit has said you must look at the opt-out state's operative exemption law. In this case, it's the California Exemption Act, and that act says that if you file a declared homestead, you are forever locked into a declared homestead. And that is, that has not been... But that's not, that sort of doesn't answer the question for the following reason. How a bankruptcy court interprets this is subject to two things. What does state law say, and is there a bankruptcy reason to modify that? That's the second piece of it. So address that, if you will. Well, no court has ever said there's a reason why you can modify it. And conversely, it's actually to the opposite. The bankruptcy court has said you can't pick and choose, which means you can't say I can choose either the automatic or I can choose the declared because once you go under California law, you run with the declared. Were those cases in the context of how we view the petition date as a forced sale? Is there a case that says, no, that's just the wrong document, you can't do that? Well, if you look at Jacobson and this case of Alderson, they... I'm sorry, Anderson, which is from the Bexley Appellate Panel in 2020. Yeah, I know it pretty well. I'm sure you do, and it just came out. And there's actually a recent decision that came out in December of 2021. I didn't provide it to the court because it just reiterates the Ninth Circuit decision, the Dobson that reiterates the Jacobson opinion. It says that you have to look at everything. You can't pick and choose. You have to take the fact with the land. And I think that paraphrase from the Ninth Circuit precedent that says you take the fact with the land basically says that, well, if on the petition date you have this declared homestead, which is undenied, then we set the value on that date. And the value on that date is very easily determined under the California Homestead Act, which the bankruptcy court has to accept. And it says that if there are a series of, let's say, liens that are in place, which is what Zola kind of said, if there's a series, how do we determine what the value would be? That would be too confusing for a judge. But the answer to that is actually contained in the bankruptcy code, sorry, in the Code of Civil Procedure for Declared Homesteads. And under the California Homestead Act, it says when you have a series of liens, you go with the very first one in line, that's CCP 703050. That's not very difficult. So on the date of the petition, you determine whether the debtor has a homestead. Okay. I'm going to jump in and ask Judge Lafferty if that's a sufficient response to your question, and if you have any more questions. I'm all set. Thank you so much. Okay. All right. So then you're a little over your time, so I'm going to stop you and thank both sides for your arguments. And the matter is submitted. Thank you, Your Honor. Thank you.
judges: FARIS, LAFFERTY, SPRAKER